AO 91 (Rev. 11/11) Criminal Complaint

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

# UNITED STATES DISTRICT COURT
for the
Southern District of Mississippi

FILED
Sep 19 2024
ARTHUR JOHNSTON, CLERK

| United States of America | ) |
|---|---|
| v. | ) |
| Victor Ramiro Solis-Villarreal | ) Case No. 1:24mj593-RPM |
| a/k/a Victor Ramiro Solis, a/k/a Victor Ramiro Soliz | ) |
| a/k/a Solis Ramiro, a/k/a Victor Solis, a/k/a Victor | ) |
| Villerreal, a/k/a Victor Villereal, a/k/a Jose B. Solis, | ) |
| a/k/a Ramiro Gonzalez, a/k/a Ramiro Gonzales, a/k/a Malehor | ) |
| ~~Barrera-Hernandez, a/k/a Malehor Barrera, a/k/a Malehor Hernandez~~ | ) |
| Defendant(s) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __September 18, 2024__ in the county of __Jackson__ in the __Southern__ District of __MS, Southern Division__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. §§ 1326(a) and (b)(1) | Unlawful Return by an Alien Removed After Conviction of a Felony |

This criminal complaint is based on these facts:

See Affidavit attached hereto and incorporated herein.

☑ Continued on the attached sheet.

_____
Complainant's signature

Mauricio Guzman, Border Patrol Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 9-19-2024

_____
Judge's signature

City and state: Gulfport, Mississippi

Robert P. Myers, Jr, United States Magistrate Judge
Printed name and title

## **AFFIDAVIT**

STATE OF MISSISSIPPI )
COUNTY OF HARRISON :
SOUTHERN DISTRICT OF MISSISSIPPI )

I, Mauricio T. GUZMAN, being first duly sworn, hereby depose and say that:

1. I am a Border Patrol Agent (BPA) of the United States Border Patrol (USBP), currently located at 10400 Larkin Smith Drive, Gulfport, Mississippi. I am a graduate of the U.S. Border Patrol Academy and have been an Agent in the Border Patrol since on or about April 15, 2007. I have approximately 18 years of experience as a law enforcement officer. As part of my official duties as a BPA, I am authorized and assigned to investigate violations of the immigration laws as well as other criminal statutes of the United States.

2. On or about September 18, 2024, at about 12:30 a.m., U.S. Border Patrol Agent (BPA) Holland assigned to the Gulfport Border Patrol Station was driving west bound near mile marker 56W on Interstate-10 in Ocean Springs, MS when the BPA noticed an Omex Bus Company 2022 Volvo Bus driving in the middle lane. BPA Holland also is a Jackson County deputized member of the South Mississippi Metro Enforcement Team (MET) which is a multi-jurisdictional task force focusing on smuggling interdiction. The bus's license plate state name was covered up and was not visible. At that time, the BPA conducted a vehicle stop at mile marker 56W.

3. Once the vehicle was stopped the BPA, who was using his officially issued body-cam unit, made contact with the driver and explained the reason for the vehicle stop. During the stop, the driver stated that most of the passengers were coming from the Miami, Florida, area and were

1

either going to Houston, Texas, or to Mexico. The BPA asked for the driver's permission to speak with the passengers on the bus. The BPA was granted consent to go onto the bus. As the BPA stepped onto the bus, he noticed the passenger (later identified as the defendant, Victor Ramiro Solis-Villarreal) duck his head down in his seat. As the BPA was walking towards the back, the BPA spoke to several passengers about their travel plans. Once the BPA made it to Solis-Villarreal's seat, it appeared to him as if Solis-Villarreal was sick or not feeling well. The BPA asked Solis-Villarreal if he was ok. Solis-Villarreal stated he was good. The BPA then inquired about his travel plan and Solis-Villarreal told the BPA that he had gone to Lake City, Florida, to visit family for two days and was now headed home to Houston, Texas.

4. BPA Holland asked Solis-Villarreal if he had any bags on the bus. Solis-Villarreal told the BPA that he didn't have any bags on the bus, but he had one below in the storage compartment. The BPA noticed there was a bag in the bus passenger compartment storage bin above his head. The BPA held the bag up and asked if the bag was Solis-Villarreal's bag. Solis-Villarreal told the BPA that the bag was not his, so the BPA then asked the rest of the passengers on the bus, and the driver, if the bag belonged to any of them to which, all the passengers and driver replied: "no". Due to the responses of everyone on the bus, BPA considered the bag to be abandoned property and opened the bag. The BPA then found gray duct tape wrapped around what appeared to be a bundle of currency. Soon after, the BPA asked Solis-Villarreal again if the bag was his. Solis-Villarreal finally admitted that it was his bag. The BPA then had Solis-Villarreal step off the bus.

5. Once off the bus, the BPA read Solis-Villarreal his Miranda Warning Rights. Solis-Villarreal waived his rights and agreed to speak with him at that time. Solis-Villarreal said the

2

currency was $40,000 and that he got it from working. Solis-Villarreal then admitted that he did not have any bag underneath in the main luggage storage compartment area of the bus.

6. MET Agent Byrd arrived on scene to assist with the stop. BPA Holland then deployed his service canine for an open-air sniff of the bottom compartment. The canine displayed no alert behavior on the bottom of the bus, but the canine did display alert behavior on the bag with the currency by sitting, with a pinpoint stare. A further search of the bag revealed that it also contained a small amount of marijuana and cocaine.

7. MET Agent Byrd transported the currency and Solis-Villarreal to the MET office for further investigation and processing. BPA Holland then learned through record checks that Victor Ramiro Solis-Villarreal is a Mexican citizen and is in the United States illegally. The BPA also learned that Victor Ramiro Solis-Villarreal is a previously convicted drug trafficker who has been deported on more than one occasion.

8. MET Investigator Frank came to the MET office to process the currency and controlled substances. At the office, Solis-Villarreal stated they he didn't want to have anything to do with currency and disavowed ownership of the currency. Agent Frank seized the currency pursuant to state law and issued a receipt to Solis-Villarreal, in preparation for seeking indictment through the Jackson County District Attorney's Office for possession of the marijuana and cocaine. The currency found in the bag was verified as $40,640.00 USD.

9. BPA Holman responded to transport Solis-Villarreal to the Gulfport MS, Border Patrol Station for processing. A further search of Solis-Villarreal's wallet during intake led to the discovery of and additional $3,712. According to Law Enforcement intelligence, the normal payment rate for currency smuggling is ten percent of the value of the contraband being

transported. In the words of Solis-Villarreal, he was in possession of $40,000. Because the currency being transported was approximately $40,000, his payment would be somewhere around $4,000. The BPA believed the $3,712 was part of Solis-Villarreal's payment for taking the bulk currency from Florida to Texas. The BPA asked if the currency in the wallet was his, and Solis-Villarreal stated that it was his currency. BPA informed Solis-Villarreal that it was his right to claim the currency; but that the BPA would be seizing the currency. The BPA further informed Solis-Villarreal that if wanted to contest the seizure, he would be given the opportunity to do so; but that he would have to show proof that the currency was obtained legally. Solis-Villarreal then changed his mind and wanted to abandon his claim to the $3,712 by signing an abandonment form.

10. At the Gulfport Border Station, Victor Ramiro Solis-Villarreal was processed using the e3/IDENT and IAFIS electronic systems. His fingerprints were electronically scanned and were automatically matched by computer to his fingerprints in prior immigration and criminal records. His identity as Victor Ramiro Solis-Villarreal was positively confirmed based on records checks from computerized fingerprint analysis and visual analysis of prior immigration photographs of Solis-Villarreal.

11. Official Immigration Record checks revealed that, on or about January 16, 1987, Victor Ramiro Solis-Villarreal had been ordered excluded from the United States by an Immigration Judge in Houston, Texas. On or about January 22, 1987, Solis-Villarreal was excluded from the United States to Mexico via Brownsville, Texas.

12. On or about May 22, 1997, Solis-Villarreal was order removed from the United States by an Immigration Judge in Huntsville, Texas. Later, on or about July 1, 1997, Solis-

4

Villarreal again was ordered removed from the United States to Mexico via Hidalgo, Texas.

13. Thereafter, on or about January 26, 2000, Solis-Villarreal was issued and served a Notice of Intent decision to Reinstate Prior Order and he was physically removed from the United States to Mexico via Hidalgo, Texas on or about September 18, 2001. Subsequently, on or about February 5, 2016, he was encountered again and interviewed at the Eden Detention Center in Eden, Texas. Once again, his prior removal order was reinstated and Solis-Villarreal was physically removed yet again from the U.S. via the Del Rio, Texas International Bridge on or about May 26, 2016.

14. Further, Criminal records revealed that Solis-Villarreal was convicted in or about 1985, for dangerous drugs and was sentenced to three years in prison. Later Solis-Villarreal was convicted of another felony in 1990, related to marijuana possession, and was sentenced to ten years imprisonment. In or about 1996, he was convicted for felony Marijuana Possession and sentenced to ten years. In or about 2000, Solis-Villarreal was convicted for Illegal Re-Entry by an Alien in violation of Title 8, US Code, Section 1326, and was sentenced to 21 months imprisonment. In or about 2006, Solis-Villarreal was convicted for an offense related to Dangerous Drugs/Cocaine-smuggling and sentenced to 20 years in prison. Finally, in or about 2007, Solis-Villarreal was charged with another offense related to cocaine and was convicted in or about 2009, and sentenced to 129 months imprisonment.

15. Additionally, a review of Department of Homeland Security databases, revealed that Victor Ramiro Solis-Villarreal had not received consent or permission to apply for readmission or to re-enter the United States, from either the Attorney General of the United States or from the Secretary of the Department of Homeland Security. Based on these facts, there is probable cause

to believe that Victor Ramiro Solis-Villarreal knowingly and voluntarily re-entered the United States in violation of Title 8, United States Code, Sections 1326(a) and (b)(1) – Unlawful Reentry by an Alien Removed After Conviction of a Felony.

Mauricio T. Guzman
Border Patrol Agent
United States Border Patrol

Sworn to and subscribed before me, this, the 19th day of September 2024.

Robert P. Myers, Jr.
United States Magistrate Judge